Case 3:15-mj-00243-BF Document 1 Filed 04/16/15 Page 1 of 11 PageID 1

SEALED

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 16 2015
CLERK, U.S. DISTRICT COURT
By _____ Deputy

# United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AND SEARCH WARRANT
FOR AUTHORIZATION TO OBTAIN
LOCATION DATA CONCERNING THE
T-MOBILE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER 214-861-1043

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 3:15-MJ-

I __Daniel Gimenez__ being duly sworn depose and say:
I am a(n) __Special Agent (SA) with the Federal Bureau of Investigation (FBI)__ and have reason to believe the system that provides precise location data and other location-based information should be activated and monitored on (name, description and/or location)

the T-Mobile cellular telephone assigned call number 214-861-1043

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of a crime; contraband, fruits of crime, or is otherwise illegally possessed; property designed for use, intended for use, or used in the commission of a crime; and location information that will assist law enforcement in arresting an individual who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4)

concerning a violation of Title __18__ United States code, Section(s) __1951(a)__ . The facts to support a finding of Probable Cause are as follows:
(See attached Affidavit of SA Daniel Gimenez).

Continued on the attached sheet and made a part hereof.    XX Yes __ No

Signature of Affiant
Daniel Gimenez
Special Agent, FBI

Sworn to before me, and subscribed in my presence

April 16, 2015                                     at    Dallas, Texas
Date                                                      City and State

PAUL D. STICKNEY
United States Magistrate Judge
Name and Title of Judicial Officer                         Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Daniel Gimenez, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state:

## Introduction

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws, and am duly authorized by the Attorney General to request a search warrant. I am currently assigned to FBI Violent Crimes Task Force in Dallas, Texas, and have been since November 20, 2014. During my time as a special agent, I have assisted with several investigations and used various investigative techniques, such as electronic and physical surveillance, interviews of witnesses and defendants, the execution of search warrants, and the use of confidential informants related to said investigations. As part of my duties, I have participated in investigations involving violations of 18 U.S.C. § 1951(a) (Hobbs Act robbery), that is, interference with commerce by robbery.

2. Based on my training and experience in Hobbs Act robbery investigations and interviews that I have conducted with defendants, informants, and other witnesses and participants in robberies, I am familiar with the ways in which robbers conduct their business, including the various means and methods by which robberies are committed, including the use of cellular telephones to facilitate the commission of the offense(s), and the interchangeability of cellular telephones amongst couples where at least one party may be involved with the crime.

Affidavit – Page 1

3. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c)(1)(A), and 28 U.S.C. §1651(a), directing T-MOBILE to assist agents with the FBI by providing all information, facilities and technical assistance needed to ascertain the physical location of the T-MOBILE cellular telephone assigned call number(s) **214-861-1043** (the **"target device"**), subscribed to "Love Sasha", but believed to be utilized by Kameron Robinson, including, but not limited to, data indicating the specific latitude and longitude of, geo location/enhanced 911 (Phase II) information, cell site information, or signal timing/triangulation (or other precise location information concerning) of the target device (the "Requested Information")[1] , for a period of 30 days.

4. I am familiar with the facts and circumstances of the investigation set forth below through my personal participation, from discussions with other FBI agents and law enforcement officers, and from my review of records and reports relating to the investigation. Because this affidavit is submitted for the limited purpose of securing a search warrant and order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein, or in the attached exhibits, are not relied on in reaching my conclusion that the requested search warrant and order should be issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Kameron Robinson, date of birth xx-xx-1992, has committed the offense interference with commerce by robbery (aiding and abetting), in violation of 18 U.S.C.

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the "target devices" at the start and end of any call.

Affidavit – Page 2

§ 1951(a). On April 7, 2015, an arrest warrant was issued for Robinson by United States Magistrate Judge Paul D. Stickney in reference to this offense. There is also probable cause to believe that the requested information will assist law enforcement in arresting Robinson, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

### Factual Background

6. On January 2, 2015, at approximately 11:22 a.m., Ennis Police officers responded to an armed robbery of AT&T Cellular World located at 609 E. Ennis Avenue, Ennis, Texas, which is in the Dallas Division of the Northern District of Texas. Three store employees were present and were victims of the armed robbery. The victims informed the police that two black males, later identified as Michael Wright and Kameron Robinson, entered the store and at least one of them, later determined to be Wright, was armed with a black handgun. The gunman was wearing a white hoodie, with a dark-colored bandana covering his lower face, and camouflage-colored pants, and the second man was wearing a black hoodie and had a white bandana covering his lower face. J.N., one of the victims, stated that the robber wearing the white bandana had a scar or tattoo on his face (I note that Robinson has a small slash-style tattoo on his brow). Both robbers ordered the three victims to the back room of the store and made them lay on the floor.

7. The robbers then ordered J.N. to open the safe where phones were stored. J.N. complied with the subjects' orders because he was in fear of being shot by the subjects. The subjects removed a large number of phones from the safe and placed them

Affidavit – Page 3

into duffle bags that they brought into the store. While the robbers were in the back room, the gunman took $820 in United States currency from A.P., one of the victims (A.P. had recently cashed his paycheck and had the money in his hand when the robbers entered the store). A.P. advised that the gunman violently kicked him on his left side while he was lying on the floor after the gunman took his money. A.P.'s injury was photographed.

8. Corporal (Cpl.) J.K. Tuley, from the Ennis Police Department, driving a marked police unit, was on his way to a funeral when he heard the robbery on the police radio. Cpl. Tuley was travelling north bound in the 300 block of Interstate 45 Service Road. Cpl. Tuley pulled to the shoulder of the road to ascertain if the dispatcher had any suspect vehicle information. While waiting for further information, Cpl. Tuley observed an orange/red Ford Escape turn onto north bound Interstate 45 Service Road from East Ennis Avenue. The Ford Escape was traveling at a high rate of speed. Cpl. Tuley began to follow the vehicle while waiting for further information. As Cpl. Tuley followed and waited for additional cover officers, the vehicle began to drive at a speed in excess of 90 miles per hour. Due to safety concerns, Cpl. Tuley activated his emergency lights and siren to stop the vehicle and subsequently advised the dispatcher that the vehicle was not stopping. Cpl. Tuley continued to pursue the vehicle.

9. While in pursuit of the vehicle on Hample Road, Cpl. Tuley observed one of the occupants throw out a bag, later found to contain numerous cell phones and tablets taken during the armed robbery of the aforementioned AT&T store in Ennis, Texas. The pursuit continued on Hample Road, and then north on Newton Road. The Ford Escape

ultimately slid off the road and collided with a tree. Cpl. Tuley observed a black male driver wearing a white tank-top T-shirt and greenish-colored pants, later identified as Michael Wright, and a black male passenger wearing a black hoodie, later identified as Kameron Robinson, exit the Ford Escape and run north into a pasture.

10. Cpl. Tuley followed both subjects to the back of the pasture where they were subsequently found hiding in a two story building. Both the vehicle pursuit and arrest of both subjects was captured on video and audio. Inside the wrecked Ford Escape, the police recovered a loaded black .45 caliber pistol, a white hoodie, and a dark-colored bandana. Police also recovered more than $1,500 in United States currency from Wright, $820 of which was returned to A.P. On January 7, 2015, the police were notified of the discovery of a second black duffle bag containing numerous cell phones and tablets, later determined to have been taken during the armed robbery of the AT&T store, by a civilian. The duffle bag was found along the flight path of the police chase involving Wright and Robinson.

11. Special Agent Daniel Gimenez interviewed AT&T Cellular World store manager M.S. at 609 E. Ennis Avenue, Ennis, Texas. M.S. was the store manager of the above mentioned AT&T Authorized Retailer, Cellular World, for approximately two years, six months. M.S. worked for the company for approximately eight years. M.S. had six employees that worked under his supervision at the time of the robbery. M.S. was not present at the store during the armed robbery that occurred on January 2, 2015. M.S. explained that on average, the business received approximately $10,000 to $15,000 per week in cell phones and electronic tablets deliveries. The business's revenue also

averaged $10,000 to $15,000 per week. The store received approximately 200 cell phones per month. Most of the business's revenue came from AT&T customers who sought upgrades to their phones, and subsequent product sales to those customers. The business lost a total of $27,773 as a result of the robbery. This included a variety of Apple iPhones, Samsung and LG products. M.S. was responsible for making monetary deposits to the business's account at Bank of America every day. On average, M.S. made daily deposits of approximately $1,200 to $1,500 in revenue from the store. The business accepted credit cards and cash as methods of payment. The store was closed for approximately seven hours after the robbery to allow police to process the crime scene and conduct interviews. The store did not reopen that day after the police left. The business lost approximately $1,200 to $1,500 due to its inability to conduct business during and after the robbery that day.

12.   Special Agent Daniel Gimenez interviewed P.C., who is the general manager for AT&T Cellular World. P.C. showed Special Agent Gimenez an iPhone retail packaging box that listed, "Designed in California" and "Assembled in China." Cellular World uses CNA Financial Corporation based in Chicago, Illinois, as an insurance company for the business. P.C. did not file a claim to CNA for the loss incurred by the robbery at the Ennis, Texas store, because their deductible was $25,000. The total loss for the Ennis store was $27,773, so filing a claim to recover the difference between the aforementioned dollar amounts was not worth the risk of an increased policy premium from CNA. The money that the business lost as a result of the robbery would

have been used to purchase, and subsequently re-sell, electronic goods shipped in interstate and foreign commerce.

## Identification of the Target Devices

13. During the course of my investigation, I have learned that Robinson utilizes cellular telephone number **214-861-1043**. The **target device** assigned call numbers **214-861-1043** was provided by Robinson's girlfriend, N.B. On April 15, 2016, N.B. was temporarily detained during the arrest of Robinson's associate, Michael Wright, in San Antonio, Texas. FBI Task Force Officer (TFO) Noe Camacho interviewed N.B., who indicated that she met Robinson at a Dallas, Texas night club called Onyx, approximately three weeks prior to the date of the interview. N.B. also stated that Robinson and Wright planned on driving from Duncanville, Texas, to San Antonio, Texas, on April 15, 2015, to "make some money." N.B. believed Robinson and Wright illegally sold drugs as primary source of illicit income. Robinson made a last minute decision not to travel to San Antonio, Texas. Robinson provided N.B. with telephone number **214-861-1043** as his primary source of contact. Furthermore, N.B. has spoken to Robinson over the last three weeks by calling **214-861-1043**. As such, I believe Robinson is still using the **target device**, and request this warrant to assist in locating and arresting him.

## Service Provider's Technical Capabilities

14. In my training and experience, I have learned that T-MOBILE is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to

which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15. Based on my training and experience, I know that T-MOBILE can collect E-911 Phase II data about the location of the target device, including by initiating a signal to determine the location of the target device on T-MOBILE's network or with such other reference points as may be reasonably available.

16. Based on my training and experience, I also know that T-MOBILE can collect cell-site data about the target device.

## Authorization Request

17. Based on the foregoing, there is probable cause to believe that the Requested Information constitutes evidence regarding the activities described above and that the Requested Information will assist law enforcement in arresting Wright, who is a

"person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

18. Pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c)(1)(A), and 28 U.S.C. § 1651(a), it is requested that the Court issue a warrant and Order authorizing the acquisition of the Requested Information and directing T-MOBILE, the service provider for the **target device**, to initiate a signal to determine the location of the **target device** on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user of the **target device**, for a period of 30 days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the FBI.

19. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **target device** outside of daytime hours.

20. IT IS FURTHER REQUESTED that the Court's order, search warrant, application for a search warrant with accompanying affidavit submitted in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that working copies should be made

available to the United States Attorney's Office, the FBI, and any other law enforcement agency designated by the United States Attorney's Office.

21. IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 2705(b), the Court order that T-MOBILE delay notice to the account holder for the **target device** or person(s) using the **target device** for a period of 30 days after the termination of the monitoring period authorized by the warrant, or any extensions thereof, because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation and may have an adverse result listed in 18 U.S.C. § 2705.

_____
DANIEL GIMENEZ
Special Agent, FBI

Sworn to before me this _____ day of April, 2015.

_____
PAUL D. STICKNEY
United States Magistrate Judge
Northern District of Texas